# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

Cook Productions, LLC,

    Plaintiff

v.

Gregory Branthley,

    Defendant

Case No.: 2:17-cv-00069-JAD-GWF

**Order Granting in Part Motion for Default Judgment**

[ECF No. 18]

    This case is modeled after the *LHF Productions* and *Cell Film Holdings* cases—brought by the same attorney—that I ruled on,[1] where the plaintiffs sued many defendants under a swarm-joinder theory for separately infringing their copyright in a film by using BitTorrent software. All of these cases follow the same litigation model: the plaintiff sues several unidentified Doe defendants for separately infringing its copyright in a film by downloading and uploading it through the same BitTorrent software. Then the plaintiff moves for expedited discovery to identify the defendants, files a first-amended complaint naming them, and then systematically dismisses the claims against them after failing to serve or settling with them.[2]

    Gregory Branthley is this case's sole remaining defendant, and he has failed to appear—let alone participate—in these proceedings. The Clerk of Court entered default against him on September 15, 2017,[3] and Cook Productions, LLC moved for default judgment two weeks later.[4] Eight months have passed, and Branthley continues to avoid this action. So, I grant Cook's motion in part.

---

[1] *See, e.g.*, *LHF Productions, Inc. v. Wilson*, 2:16-cv-02368-JAD-NJK; *LHF Productions, Inc. v. Kabala*, 2:16-cv-02028-JAD-NJK; *LHF Productions, Inc. v. Buenafe*, 2:16-cv-01804-JAD-NJK; *LHF Productions, Inc. v. Boughton*, 2:16-cv-01918-JAD-NJK; *LHF Productions, Inc. v. Smith*, 2:16-cv-01803-JAD-NJK; *Cell Film Holdings LLC v. McCray*, 2:16-cv-02089-JAD-NJK; *Cell Film Holdings LLC v. Galang*, 2:16-cv-02142-JAD-VCF; *Cell Film Holdings LLC v. Acosta*, 2:16-cv-01853-JAD-VCF.

[2] *See generally* docket reports for the cases cited in note 1.

[3] ECF No. 17.

[4] ECF No. 18.

1

**Discussion**

**A.    Default-judgment standard**

Federal Rule of Civil Procedure 55(b)(2) permits a plaintiff to obtain default judgment if the clerk previously entered default based on a defendant's failure to defend. After entry of default, the complaint's factual allegations are taken as true, except those relating to damages.[5] "[N]ecessary facts not contained in the pleadings, and claims [that] are legally insufficient, are not established by default."[6] The court has the power to require a plaintiff to provide additional proof of facts or damages in order to ensure that the requested relief is appropriate.[7] Whether to grant a motion for default judgment lies within my discretion,[8] which is guided by the seven factors outlined by the Ninth Circuit in *Eitel v. McCool*:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.[9]

A default judgment is generally disfavored because "[c]ases should be decided upon their merits whenever reasonably possible."[10]

**B.    The BitTorrent protocol**

A brief description of the BitTorrent protocol is helpful to contextualize my *Eitel* analysis. *Safety Point Products, LLC v. Does* describes it well:

---

[5] *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam); FED. R. CIV. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

[6] *Cripps v. Life Ins. Co.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

[7] *See* FED. R. CIV. P. 55(b)(2).

[8] *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986).

[9] *Id.* at 1471–72.

[10] *Id.* at 1472.

BitTorrent is a program that enables users to share files via the internet. Unlike other "peer-to-peer" (P2P) file sharing networks that transfer files between users or between a user and a central computer server, BitTorrent allows for decentralized file sharing between individual users who exchange small segments of a file between one another until the entire file has been downloaded by each user. Each user that either uploads or downloads a file segment is known as a "peer." Peers that have the entire file are known as "seeds." Other peers, known as "leeches" can simultaneously download and upload the pieces of the shared file until they have downloaded the entire file to become seeds.

Groups of peers that download and upload the same file during a given period are known as a "swarm," with each peer being identified by a unique series of alphanumeric characters known as "hashtag" that is attached to each piece of the file. The swarm's members are relatively anonymous, as each participant is identifiable only by her Internet Provider (IP) address. Overseeing and coordinating the entire process is a computer or server known as a "tracker" that maintains a record of which peers in a swarm have which files at a given time. In order to increase the likelihood of a successful download, any portion of the file downloaded by a peer is available to subsequent peers in the swarm so long as the peer remains online.

But BitTorrent is not one large monolith. BitTorrent is a computer protocol, used by various software programs known as "clients" to engage in electronic file-sharing. Clients are software programs that connect peers to one another and distributes data among the peers. But a peer's involvement in a swarm does not end with a successful download. Instead, the BitTorrent client distributes data until the peer manually disconnects from the swarm. It is only then that a given peer no longer participates in a given BitTorrent swarm.[11]

## C. Evaluating the *Eitel* factors

### 1. *Possibility of prejudice to Cook*

The first *Eitel* factor weighs in favor of granting default judgment against Branthley. Cook sent Branthley numerous demand letters and a summons along with the first-amended

---

[11] *Safety Point Products, LLC v. Does*, 2013 WL 1367078, at *1 (N.D. Ohio Apr. 4, 2013) (internal citations omitted).

complaint, but Branthley never responded.[12] Cook claims that Branthley infringed its copyright by downloading its film using BitTorrent software. Given the nature of BitTorrent software, Branthley may be exacerbating Cook's injury by continuing to seed the file to the BitTorrent swarm.

### 2. *Substantive merits and sufficiency of the claims*

The second and third *Eitel* factors require Cook to demonstrate that it has stated a claim on which it may recover.[13] The first-amended complaint sufficiently pleads Cook's direct-copyright-infringement, contributory-copyright-infringement, and vicarious-liability claims.

To present a prima facie case of direct infringement, Cook must show that: (1) it owns the allegedly infringed material, and (2) the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106.[14] Cook alleges that it is the owner of the copyright registration for the film "London Has Fallen."[15] Cook also alleges that Branthley willfully violated several exclusive rights granted by 17 U.S.C. § 106, and that those violations caused it to suffer damages.[16]

The contributory-copyright-infringement claim requires Cook to allege that Branthley "had knowledge of the infringing activity" and "induce[d], cause[d,] or materially contribute[d] to the infringing conduct of another."[17] "Put differently, liability exists if the defendant engages in personal conduct that encourages or assists the infringement."[18] Given the nature of BitTorrent technology, BitTorrent swarm participants who download files compulsorily upload

---

[12] ECF No. 18 at 4.

[13] *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

[14] *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).

[15] ECF No. 9 at 10, ¶ 46; *see also* ECF No. 9-2.

[16] ECF No. 9 at 10–11.

[17] *A&M Records*, 239 F.3d at 1019 (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt.*, 443 F.2d 1159, 1162 (2d Cir. 1971) and citing *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996)).

[18] *Id.* (quoting *Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 693, 706 (2d Cir. 1998)).

those same files so that other participants may download them at a faster rate. Accordingly, Cook's allegations that each defendant is a contributory copyright infringer *because* they participated in a BitTorrent swarm[19] is sufficient to satisfy the induced-caused-or-contributed requirement. Cook satisfies the remaining requirements by alleging that Branthley knew or should have known that other BitTorrent-swarm participants were directly infringing on Cook's copyright by downloading the files that they each uploaded.[20]

Cook also claims that Branthley, as the account holder for the Internet service, is vicariously liable for any infringing activity conducted by other users on his internet connection.[21] "Vicarious infringement is a concept related to, but distinct from, contributory infringement."[22] "To state a claim for vicarious copyright infringement, [Cook] must allege that [Branthley] had (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity."[23]

Cook's allegations satisfy the first prong. As the court discussed in *Dallas Buyers Club, LLC v. Doughty*, "the Internet service account holder, appea[rs] to have had exclusive control over use of the Internet service" and the account holder "could have simply secured access to the Internet by creating a password or by changing an already existing password."[24] "Thus, . . . [the account holder] had the capacity to terminate use of his Internet service by any infringing third party if he believed it was being used to violate applicable law."[25]

Cook also satisfies the direct-financial-interest prong. "The essential aspect of the direct financial benefit inquiry is whether there is a causal relationship between the infringing activity

---

[19] ECF No. 9 at 11, ¶ 56.

[20] *Id.* at 12, ¶¶ 58–61.

[21] *Id.* at 14.

[22] *Perfect 10, Inc. v. Visa Intern. Service Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007).

[23] *Id.*

[24] *Dallas Buyers Club, LLC v. Doughty*, 2016 WL 1690090 (D. Or. Apr. 27, 2016).

[25] *Id.* (citing *A&M Records*, 239 F.3d 1004).

and any financial benefit a defendant reaps, regardless of how substantial the benefit is in proportion to a defendant's overall profits."[26] "Financial benefit exists where the availability of infringing material acts as a 'draw' for customers."[27] "The size of the 'draw' relative to a defendant's overall business is immaterial. A defendant receives a 'direct financial benefit' from a third-party infringement so long as the infringement of third parties acts as a 'draw' for customers 'regardless of *how substantial* the benefit is in proportion to a defendant's overall profits."[28] Cook alleges that Branthley benefitted from third-party infringement by viewing "Mr. Church" without paying for it.[29] The law is clear that it doesn't matter how large the financial benefit is: by watching the BitTorrent-downloaded film, Branthley saved the cost of a movie ticket, and that is a direct financial benefit.

I therefore find that Cook sufficiently pled each of its claims in the first-amended complaint. I also find that Cook's claims have substantive merit, subject to any defenses that Branthley could raise.

### 3. *Sum of money at stake*

The sum-of-money factor requires me to consider "the amount of money at stake in relation to the seriousness of [Branthley's] conduct."[30] "If the sum of money at stake is completely disproportionate or inappropriate, default judgment is disfavored."[31] Cook asks for statutory damages and attorney's fees and costs.

---

[26] *Perfect 10, Inc. v. Giganews, Inc.*, 2014 WL 8628031, at *3 (C.D. Cal. Nov. 14, 2014) (quoting *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004)).

[27] *A&M Records*, 239 F.3d at 1023.

[28] *Perfect 10,* 2014 WL 8628031, at *3 (quoting *Ellison*, 357 F.3d at 1079).

[29] ECF No. 9 at 13, ¶ 68.

[30] *Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1071 (D. Ariz. 2006) (quoting *PepsiCo. Inc v. California Security Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002)).

[31] *Twentieth Century Fox*, 438 F. Supp. 2d at 1071.

For statutory damages, Cook requests $15,000 under 17 U.S.C. § 504(c).[32] The statute sets a $750 minimum and a $30,000 maximum award of damages for copyright infringement,[33] and that maximum can be increased up to $150,000 where the infringement was willful.[34] I have "wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima."[35]

Given Branthley's numerous opportunities to respond to Cook's demand letters, first-amended complaint, and this motion, coupled with Cook's unopposed allegations that I take as true, the factual showing before me indicates that Branthley is a willful copyright infringer. But I do not find that $15,000 is necessary to compensate Cook for its injury and to deter Branthley and other BitTorrent users. Although I acknowledge that other courts have awarded $15,000 for the same offense, I am not persuaded by their actions. After considering the lost-profits movie ticket sales, the cost of identifying infringers and pursuing litigation, and the boundaries provided by § 504(c), I determine that $1,500 is the appropriate damage award. This amount adequately accomplishes the goals of § 504(c) to protect copyrighted works and deter infringement. This amount is also not excessive because it is only 1% of the statutory maximum for willful infringement.

The Copyright Act also allows courts to award the recovery of full costs and reasonable attorney's fees to the prevailing party as part of those costs.[36] Cook, in applying the lodestar method,[37] moves for $2,126.25 in attorney's fees[38] and $480 in costs, for a total of $2,606.25.

---

[32] ECF No. 18 at 8.

[33] 17 U.S.C. § 504(c)(1).

[34] 17 U.S.C. § 504(c)(2).

[35] *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) (quoting *Harris v. Emus Records Corp.*, 738 F.2d 1329, 1335 (9th Cir. 1984)).

[36] 17 U.S.C. § 505 (2012).

[37] *See Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).

[38] This number is based on a rate of $375.00 per hour for 5.67 hours.

The total sum of money at stake, then, is $4,106.25, and I find that this factor weighs in favor of default judgment.

### 4. *Possibility of a dispute concerning material facts*

Next I consider the possibility that material facts are disputed. Cook adequately alleged three copyright-infringement claims against Branthley. Branthley failed to appear or otherwise respond, so he admitted as true all of the material facts alleged in Cook's complaint. Because those facts are presumed true and Branthley failed to oppose this motion, no factual disputes exist that would preclude the entry of default judgment against him.

### 5. *Excusable neglect*

Under this factor, I consider whether Branthley's default may have resulted from excusable neglect. Cook sent Branthley two demand letters roughly eight and five weeks prior to filing its first-amended complaint. Branthley did not respond to either of them. Then Cook filed its first-amended complaint on June 1, 2017, and sent Branthley a third demand letter. He didn't respond to that letter either. Cook served Branthley with process on July 24, 2017,[39] and Branthley failed to appear or file an answer to the first-amended complaint. Three months later, Cook moved for entry of default against Branthley, and two weeks after that motion was granted, Cook moved for default judgment.[40] Branthley has never appeared or responded. Branthley has demonstrated a habit of ignoring Cook, so I can only conclude that his default was not the product of excusable neglect. This factor thus weighs in favor of entering default judgment.

### 6. *Favoring decisions on the merits*

"Generally, default judgments are disfavored because cases should be decided upon their merits whenever reasonably possible."[41] Because Branthley has failed to respond to anything at all in this action, it is not possible to decide this case on its merits, so this factor, too, weighs in

---

[39] ECF No. 15.

[40] ECF Nos. 16, 17, 18.

[41] *Eitel*, 782 F.2d at 1472.

favor of default judgment. As every factor weighs in favor of entering default judgment, I grant Cook's motion.

**D.     Permanent injunction**

As its final claim for relief, Cook asks for a permanent injunction enjoining Branthley from "directly or indirectly infringing [its] rights" over its film "including[,] without limitation[,] using the Internet to reproduce, to distribute, to copy, or to publish the motion picture."[42] The Copyright Act allows me to "grant temporary and final injunctions on such terms as [I] may deem reasonable to prevent or restrain infringement of a copyright."[43] The Supreme Court held in *eBay Inc. v. MercExchange, L.L.C.* that a plaintiff must satisfy a four-factor test to receive a permanent injunction in a patent-infringement case.[44] Cook must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."[45] This test also applies to copyright-infringement cases.[46]

Cook argues that "[m]onetary damages alone are simply inadequate" because "absent injunctive relief to force the deletion of each torrent file from [Branthley's] computer[] . . . infringement will continue unabated in exponential fashion."[47] But I conclude that a monetary judgment of $4,106.25 is sufficient to compensate Cook for any infringement injury and likely to sufficiently deter Branthley from further infringing Cook's copyright, so Cook fails to satisfy the second factor of the permanent-injunction test, and I deny its request for injunctive relief.

---

[42] ECF No. 18 at 12.

[43] 17 U.S.C. § 502(a).

[44] *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

[45] *Id.*

[46] *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 995–96 (9th Cir. 2011).

[47] ECF No. 18 at 11.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that Cook's motion for default judgment against Gregory Branthley **[ECF No. 46] is GRANTED in part and DENIED in part**. I award Cook $1,500 in statutory damages and $2,606.25 in reasonable attorney's fees and costs for a total of $4,106.25. I decline to issue a permanent injunction against Branthley.

The **Clerk of Court** is directed to **ENTER JUDGMENT** in favor of Cook Productions, LLC and against Gregory Branthley in the total amount of $2,606.25 and **CLOSE THIS CASE**.

Dated: June 1, 2018

_____
U.S. District Judge Jennifer A. Dorsey